



FILED

Oct 30 2024, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Brenda K. (Sweat) Tincher,

*Appellant-Petitioner*

v.

Jason A. Sweat,

*Appellee-Respondent*

October 30, 2024

Court of Appeals Case No.
24A-DR-1137

Appeal from the Adams Superior Court

The Honorable Brian D. Hutchison, Special Judge

Trial Court Cause No.
01D01-0704-DR-12

**Opinion by Judge Crone**
Chief Judge Altice and Judge Vaidik concur.

**Crone, Judge.**

## Case Summary

[1] Brenda K. Tincher, formerly known as Brenda K. Sweat (Mother), appeals the trial court's orders that found her in civil contempt of court and imposed a sanction of seven days of incarceration. She contends that the trial court abused its discretion by finding her in contempt of court and imposing the sanction. We affirm in part, concluding that the trial court did not abuse its discretion regarding its contempt finding. However, because we also conclude that the trial court abused its discretion by imposing a sanction that was punitive, we vacate the sanction and remand for any further proceedings the trial court deems necessary.

## Facts and Procedural History

[2] Mother and Jason A. Sweat (Father) were married and had one child, L.S. (Child), born in September 2008. The parties' marriage was dissolved on July 8, 2011, and Mother was awarded custody of Child. Over the next few years, the parties engaged in post-dissolution proceedings. In 2012 and 2013, respectively, Mother was found to be in contempt of court for failing to pay child support and interfering with Father's parenting time, and the court imposed sanctions of jail time. The trial court stayed the 2012 sanction on the condition that Mother pay her child support obligation, and the court suspended the 2013 sanction upon Father's request.

[3]     The events leading to this appeal began in July 2023, when Father filed multiple pleadings seeking custody of Child and requesting that Mother be found in contempt of court for interfering with Father's parenting time with Child. On November 17, a hearing was held. On November 20, the trial court issued its order that in relevant part denied Father's petition to modify custody of Child but found Mother to be in civil contempt of court.

[4]     Regarding the issue of contempt, the court specifically found that "[Mother] has violated [Father's] parenting time rights. Specifically, she is chronically and unreasonably late to parenting exchanges, and she has frustrated [Father's] rights to private conversation with his child by confiscating the cell phone that [Father] purchased for [Child]." Appellant's App. Vol. 2 at 50. The court imposed a sanction, ordering that Mother serve thirty days in jail, but suspended the sanction

> on the conditions that [she] immediately return the telephone to [Child] and allow [Child] unfettered telephone contact with [Father], and that [Mother] promptly appear at the designated exchange location at the appropriate time. Any emergency that might result in delay must be immediately communicated to [Father].

*Id.* The court noted that it had "previously found [Mother] in contempt for violating [Father's] parenting time rights, but that the sanction was withheld on [Father's] request." *Id.* The court warned Mother that it was "unlikely to withhold [the] sanction in the event of any further violation." *Id.*

[5] On December 21, Mother filed a motion to correct error and for clarification of the November 20 order. Following a telephonic hearing held on January 17, 2024, the trial court denied Mother's motion.

[6] On April 1, 2024, Father filed several motions seeking to have Mother found in civil contempt of court. Father again alleged that Mother had interfered with his parenting time with Child. The trial court treated the motions as "a motion to execute the sanctions from the November [20,] 2023 contempt finding." *Id.* at 46. Father also filed a motion for emergency temporary custody of Child. Mother filed a motion to dismiss the contempt issue, a motion for change of venue, and a motion seeking to have Father held in civil contempt of court for failing to pay child support.

[7] The trial court held an evidentiary hearing on May 14. Father testified that Mother had been late several times when meeting him to exchange Child after his parenting time had ended. He told the court that he has "other children" that he is obligated to "drop off at a certain time and pick up at a certain time" and that Mother's tardiness resulted in Father's inability to "plan" for the exchanges for his other children. Tr. Vol. 2 at 11. Mother testified and admitted that she had arrived late to exchange Child with Father on multiple occasions. Following the hearing, the trial court issued an Order for Jail Commitment (the May 14 Commitment Order), finding Mother to be in civil contempt of court. The court imposed a sanction of seven days of incarceration with no good time credit.

On May 15, the court issued a separate order (the May 15 Order) that addressed the parties' outstanding motions and provided in relevant part:

> 1. On November 20, 2023, this Court, after finding [Mother] in contempt, sentenced her to 30 days incarceration, stayed on the condition that she immediately return a certain telephone to [Child] and allow her unfettered telephone contact with [Father] and that [Mother] promptly appear at the designated exchange locations at the appropriate times.

> 2. Since November 2023, [Mother] has failed to return the telephone to [Child], only returning it to [Father] at [the] hearing. Furthermore, [Mother] has failed on a number of occasions to appear at the designated exchange locations at the appropriate times. Additionally, [Mother] has not allowed [Child] unfettered telephone access to [Father].

> 3. [Mother] remains in contempt and a sanction should issue.

Appellant's App. Vol. 2 at 46. Mother was ordered to "serve seven (7) days of the previously suspended thirty (30) day sentence [and] report to the [jail] not later than noon on Sunday, May 19, 2024, to serve said sentence, without credit for good time served." *Id.* The court stayed the remaining twenty-three days of the thirty-day sanction "on the conditions that [Mother] not violate [the court's] order prior to [Child's eighteenth] birthday," and that Mother pay Father $135 to reimburse him for "the cost of 3 months cell phone service." *Id.*

The court granted Father's motion for temporary emergency custody of Child. Mother had been arrested in March 2024 and subsequently charged with two counts of level 6 felony domestic battery in the presence of a child less than

sixteen years of age. No-contact orders had been issued as a result of the criminal allegations. The court's May 15 Order provided that "[i]n the event that the no-contact orders are lifted while the criminal case pends, [Mother] shall be granted parenting time rights with [Child] identical to those previously exercised by [Father]." *Id.* at 47. The order further provided that "in the event that the criminal case against [Mother] is dismissed or that she is acquitted in that case, custody of [Child] will be restored to her, subject to [Father's] parenting time rights," but if Mother is convicted, "the matter will be set for hearing on request of either party for a permanent change of custody." *Id.*

[10] The court denied Mother's motion for change of venue and determined that Mother's motion seeking to have Father held in civil contempt of court for failing to pay child support could not be addressed at the May 14 hearing. Regarding that matter, the court found that the hearing had "carried over an additional two hours" and "there was insufficient opportunity for [Mother] to present all of her evidence on [the] motion." *Id.* at 48.

[11] On May 16, 2024, Mother filed her notice of appeal of the May 14 Commitment Order and the May 15 Order. Mother also filed a motion with this Court, seeking an emergency stay of the trial court's sanction that she serve seven days in jail pending the resolution of her appeal, which this Court granted on May 17. Mother now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[12] Mother argues that the trial court abused its discretion when it found that she was in civil contempt of court and imposed a sanction of seven days of incarceration. Initially, we note that Father has not filed an appellee's brief.

> When an appellee fails to file a brief, we apply a less stringent standard of review. We are under no obligation to undertake the burden of developing an argument for the appellee. We may, therefore, reverse the trial court if the appellant establishes prima facie error. "Prima facie" is defined as "at first sight, on first appearance, or on the face of it."

*Deckard v. Deckard*, 841 N.E.2d 194, 199 (Ind. Ct. App. 2006) (citations omitted).

## Section 1 – The trial court did not abuse its discretion by finding Mother to be in civil contempt of court.

[13] First, Mother argues that the trial court abused its discretion when it found that she was in civil contempt of court. The determination of whether an individual is in contempt of a court order is a matter left to the trial court's discretion. *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 741 (Ind. Ct. App. 2014). Thus, we will reverse a finding of civil contempt only upon an abuse of discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* When reviewing a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* To hold a party in contempt for violating a court order, the trial court must find that the

party acted with "willful disobedience." *Himes v. Himes*, 57 N.E.3d 820, 829 (Ind. Ct. App. 2016), *trans. denied*.

[14] Mother contends that the trial court's November 20, 2023 contempt order is "ambiguous and indefinite." Appellant's Br. at 12. Mother also contends that the evidence was insufficient to prove that she "willfully" disobeyed that order by failing to arrive on time when she exchanged Child with Father. Mother argues that Father failed to present evidence that the multiple times that she was late dropping off Child to Father, between November 2023 and present, "impact[ed] Father's time with Child" and that, "[i]f anything, Father receive[d] additional time with … Child." *Id.* Mother also argues that the evidence showed that she was "on time for the large majority" of the exchanges and that she had informed Father when she anticipated arriving late. *Id.* at 13.

[15] Mother's arguments, however, are merely a request that we reweigh the evidence, which we will not do. *See Akiwumi*, 23 N.E.3d at 741. The trial court's November 20, 2023 order was straightforward. The order clearly provided that the trial court had found Mother in civil contempt of court because she, among other things, was "chronically and unreasonably late to parenting exchanges," and the court imposed a thirty-day sentence. Appellant's App. Vol. 2 at 50. The order also provided that the sentence would be suspended on the condition that Mother "promptly appear at the designated exchange location at the appropriate time." *Id.*

As for whether Mother willfully disobeyed the trial court's November 20, 2023 order, it is well settled that "[a] defendant's state of mind is a subjective fact and may be shown by indirect or circumstantial evidence." *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 456 (Ind. 1999), *cert. denied*. In its May 15, 2024 order, the court found that since November 2023, Mother had "failed on a number of occasions to appear at the designated exchange locations at the appropriate times[,]" and the evidence presented at the May 14, 2024 hearing amply supports the court's finding. Mother had been ordered to arrive on time to exchange Child with Father, and the evidence favorable to the judgment showed that Mother chose not to do so. Therefore, we conclude that the evidence is sufficient to support a finding that Mother's actions were willful. Accordingly, the trial court did not abuse its discretion by finding Mother in civil contempt of court for failing to arrive on time when she exchanged Child with Father.[1] We affirm this portion of the court's May 15 Order.

## Section 2 – The trial court abused its discretion by imposing a civil contempt sanction that is punitive, not coercive, and cannot be purged.

Next, Mother argues that the trial court abused its discretion by imposing a sanction of seven days of incarceration after finding her in civil contempt of

---

[1] To the extent that Mother contends that the trial court abused its discretion by finding her in contempt of court for preventing Child from speaking with Father by telephone, she has waived this issue for our review by failing to present a cogent argument. *See generally* Ind. Appellate Rule 46(A)(8)(a) (providing that appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning").

court. Mother does not challenge the length of the trial court's sanction; rather, she argues that the sanction was improper because it was punitive in nature and "does not coerce compliance with the court's order [or] benefit the aggrieved party." Appellant's Br. at 14. We agree.

[18] "The principal purpose of a civil-contempt proceeding is not to punish the contemnor but rather to coerce action for the benefit of an aggrieved party." *Bessolo v. Rosario*, 966 N.E.2d 725, 732 (Ind. Ct. App. 2012), *trans. denied*; *see also In re Paternity of M.P.M.W.*, 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009) ("In a civil contempt action, imprisonment is for the purpose of coercing compliance with the order."). While imprisonment necessarily has both punitive and deterrent effects, imprisonment as a sanction for contempt will be viewed as remedial rather than punitive when the court conditions release upon the contemnor's willingness to comply with the court's order from which the contempt finding was based. *See Bessolo*, 966 N.E.2d at 732. In other words, the contemnor must be given the opportunity to "purge" the contempt and gain release from prison. *Moore v. Ferguson*, 680 N.E.2d 862, 866 (Ind. Ct. App. 1997), *trans. denied*.

[19] We note, however, that this is not the typical contempt case in which a court seeks to coerce the completion of a single, definitive act, such as the payment of money. Rather, Mother was required to comply with the court's November 20, 2023 order by, among other things, arriving on time for the parenting time exchanges and allowing Child unrestricted telephone contact with Father. Under these circumstances, the traditional requirement that the contemnor be

given an opportunity to purge the contempt seems counterintuitive, as it is difficult to imagine a jail-time sanction that would include a purge condition while retaining the intended coercive effect. Nevertheless, we assume, without reaching a determination, that the trial court was required to provide Mother with a purge condition. The trial court failed to do so. Therefore, we conclude that the trial court abused its discretion by imposing the sanction. *See Thompson v. Thompson*, 811 N.E.2d 888, 906 (Ind. Ct. App. 2004) (holding that two-week jail sentence for contempt was illegal where trial court failed to include provision allowing defendant to purge himself of contempt and forgo jail sentence by complying with trial court's order), *trans. denied* (2005).

[20] Furthermore, we note that the trial court awarded Father temporary emergency custody of Child, and the record before us does not indicate that the no-contact orders that were issued against Mother were removed. Thus, the parenting time arrangements at issue between the parties, particularly the exchanges of Child and Child's telephone contact with Father, are no longer in effect, and Mother's incarceration can have no coercive effect on her or provide a benefit to Father. The issue before us is whether the sanction of incarceration was of a nature that could coerce Mother into compliance with the trial court's orders, or whether the sanction was solely a punitive measure for Mother's failure to arrive at the exchanges on time and to allow Child unrestricted telephone contact with Father. We conclude that, given the facts and circumstances of this case, Mother's sentence was punitive in nature, not coercive. Accordingly, we vacate the trial court's May 14 Commitment Order and that portion of the court's May

Order imposing the seven-day sentence and remand for any further proceedings that the trial court deems necessary, consistent with this memorandum decision.

[21]    Affirmed in part, vacated in part, and remanded.

Altice, C.J., and Vaidik, J., concur.

ATTORNEY FOR APPELLANT

Alexander N. Moseley
Dixon & Moseley, P.C.
Indianapolis, Indiana