ATTORNEY FOR APPELLANT
Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR A.S.
Richard R. Fox
Steven A. Gustafson
New Albany, Indiana

ATTORNEYS FOR
THE STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Kristin K.E. Garn
Elizabeth C. Rogers
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
May 13 2014, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 10S01-1402-MH-113

IN RE MENTAL HEALTH ACTIONS FOR A.S.,

SARA TOWNSEND

*Appellant (Defendant below).*

Appeal from the Clark Circuit Court, No. 10C01-1208-MH-124
The Honorable Daniel E. Moore, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 10A01-1211-MH-501

**May 13, 2014**

**David, Justice.**

The Indiana Code provides a mechanism for individuals to seek immediate emergency treatment for individuals they believe to be a threat to themselves or others. Here, a woman's co-worker completed an application to initiate just such a process, which led a trial court judge to issue a warrant for the woman's detention and treatment. The judge later grew skeptical as to the truth of the allegations set forth in the application and ordered the co-worker to appear in court,

found her in contempt, and imposed sanctions. Because we conclude that the trial court lacked the statutory authority to find the co-worker in contempt, and because the co-worker's actions did not place her under the trial court's authority to impose sanctions as an inherent power of the judiciary, we reverse.

**Facts and Procedural History**

Sara Townsend, an Indiana resident, and A.S. were nurses at a hospital in Louisville, Kentucky. On August 31, 2012, Townsend completed an application for emergency detention, seeking a seventy-two-hour emergency detention of A.S. pursuant to Indiana Code § 12-26-5-1. Townsend alleged that A.S. was mentally ill and dangerous or gravely disabled, and claimed that A.S. had threatened suicide. A doctor signed off on Townsend's application, concurring that A.S. presented a danger to herself or others, and pursuant to the application's filing, the Clark County Circuit Court issued a warrant for A.S. to be transported to a hospital and detained for emergency treatment. A.S. was taken into custody for treatment that same day.

The next morning, the judge who issued the warrant received a phone call from A.S.'s boyfriend, a local police officer. The officer stated that he disagreed with the allegations. The judge then called the hospital where A.S. was detained and learned that she was not exhibiting any of the symptoms alleged in the application for emergency detention. Doctors at the hospital determined that there was no cause to continue detaining A.S. and discharged her on September 2, 2012.

On September 21, 2012, the judge issued Townsend a citation and order to appear and show cause why she should not be "held in contempt for willfully hindering and delaying or disobeying lawful process of this court and directly making false and inaccurate statements." (Appellant's App. at 19–20.) Townsend filed a motion to dismiss, arguing that there was no statutory basis to hold her in contempt and that the Indiana Code provides immunity for persons who initiate such emergency detention actions without malice, bad faith, or negligence.

2

The court held hearings on October 3, 2012, and October 11, 2012, at which it heard testimony from Townsend, A.S., several of their co-workers, and the police officer. At the conclusion of the hearings, it denied Townsend's motion to dismiss and found her in indirect contempt, concluding that what she did "was irresponsible and it was reckless[] and it set in motion a chain of events that led to an arrest." (Tr. at 155, 158.) In its written contempt order, it further explained that "Ms. Townsend's actions hindered and delayed the lawful execution of a Court Order in that she used false statements to obtain such Order." (Appellant's App. at 47.) As punishment, the court ordered Townsend to pay the hospital bill A.S. incurred as a result of the detention; fined Townsend five hundred dollars (to be paid to the treating hospital for the purpose of funding treatment for indigent persons); ordered her to pay A.S.'s attorney fees in the sum of one thousand dollars; and ordered her to write letters of apology to A.S. and the treating hospital.

Townsend appealed.[1] The Court of Appeals concluded that the trial court lacked statutory authority to find Townsend in indirect civil contempt. In re Mental Health Actions for A.S., 997 N.E.2d 30, 35–36 (Ind. Ct. App. 2013). But it nevertheless upheld the trial court's order directing Townsend to pay A.S.'s hospital bill and attorney fees, and the fine paid to the hospital, as a legitimate exercise of the trial court's inherent powers to issue reasonable sanctions to protect the integrity of the court and prevent abuse of the judicial process. Id. at 36–37. We granted transfer, thereby vacating the Court of Appeals opinion. In re Mental Health Actions for A.S., Sara Townsend, 3 N.E.3d 975 (Ind. 2014) (table); Ind. Appellate Rule 58(A).

---

[1] During the pendency of the appeal, the trial court stayed the portions of its contempt order requiring Townsend to pay the treating hospital five hundred dollars and write letters of apology to A.S. and the hospital. It denied Townsend's request to stay the portions of its order requiring her to pay A.S.'s hospital bill and attorney fees.

3

**The Trial Court Lacked Authority to Find Townsend in Contempt and Impose Sanctions**

Generally speaking, "contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." City of Gary v. Major, 822 N.E.2d 165, 169 (Ind. 2005). Contempt may be either direct or indirect. State v. Heltzel, 552 N.E.2d 31, 34 (Ind. 1990). It is direct when it involves "acts which are committed in the presence of the court or in such close proximity to it so as to disrupt its proceedings while in session." Id. And indirect contempt involves those acts "committed outside the presence of the court 'which nevertheless tend[] to interrupt, obstruct, embarrass or prevent the due administration of justice.'" Id. (quoting 6 IND. LAW ENCYC. *Contempt* § 2 (1958)). The General Assembly has, properly, codified the elements and procedural requirements for both direct and indirect contempt. See Ind. Code chapter 34-47-2 (direct contempt), chapter 34-47-3 (indirect contempt); LaGrange v. State, 238 Ind. 689, 692–93, 153 N.E.2d 593, 595 (1958) (judicial power to punish for contempt is inherent and "essential to the existence and functioning of our judicial system," and legislature "has no power to take away or materially impair it" but "may regulate the exercise of the inherent contempt power by prescribing rules of practice and procedure").

Additionally, though a contempt proceeding is technically neither civil nor criminal, those labels are applied to certain categories of contemptuous misconduct based largely on the purpose of the remedy. Heltzel, 552 N.E.2d at 33; Jones v. State, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006), trans. denied. Criminal contempt actions are punitive and are carried out in response to "an act directed against the dignity and authority of the court which obstructs the administration of justice and which tends to bring the court into disrepute or disrespect." Heltzel, 552 N.E.2d at 34. Civil contempt, however, is misconduct arising from "a violation of a court order which results in a proceeding for the benefit of the aggrieved party," and the resulting penalties are either coercive or remedial. Duemling v. Fort Wayne Cmty. Concerts, Inc., 243 Ind. 521, 524, 188 N.E.2d 274, 276 (1963); Jones, 847 N.E.2d at 199. Civil contempt "is not an offense primarily against the dignity of the court, but rather is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party." Duemling, 243 Ind. at 524, 188 N.E.2d at 276.

4

Here, the trial court found Townsend to be in indirect civil contempt. There are several potential statutory bases for such a finding. See, e.g., Ind. Code §§ 34-47-3-1 (willful disobedience of court order or process), -3 (assaulting, influencing, or intimidating witnesses), -4 (false or inaccurate reporting of case, trial, or proceeding). But the trial court expressly found Townsend in indirect contempt pursuant to Ind. Code § 34-47-3-2. This provision provides that "[a] person who willfully resists, hinders, or delays the execution of any lawful process, or order of any court of record is guilty of an indirect contempt of court."

It is apparent that Townsend's conduct did not rise to meet that statute—nor could it. The factual basis for the trial court's finding of contempt was that Townsend made false statements in the application for emergency detention, and that those false statements were used as the basis for the warrant issued to detain A.S. But the plain import of the statutory language is that the contemptuous misconduct is in the resisting, hindering, or delaying in execution of an existing process or previously issued court order. And here, as Townsend argues, there was no such lawful process or court order in place when she acted—rather, her actions initiated the lawful process or court order. It is axiomatic that she could not resist, hinder, or delay the execution of something that did not yet exist. Thus, the trial court acted outside of its statutory authority in finding Townsend in indirect contempt and its judgment to that effect is reversed.

The question then remains as to whether the sanctions that flowed from the trial court's contempt finding may still be imposed independent of that finding. We have said that "the authority of a court to sanction a party for contempt is not a matter of legislative grace," and that instead "the statutory definition of indirect contempt is merely a legislative recognition of our courts' inherent power to cite and punish for contempt." Major, 822 N.E.2d at 169. But at the same time there must still be some basis for the trial court to act in finding the party in contempt—there must have been a proceeding disrupted, for example, or a lawful order disobeyed. Cf. id. ("The law in Indiana is well settled that a person cannot be held in contempt of court for failure to obey an order if the issuing court had no jurisdiction to give the order.") And without such an occurrence here, did the trial court's inherent power to impose sanctions on Townsend still exist?

5

In this case, we think not.  Though the inherent power of a trial court to impose sanctions is not always tied to a finding of contempt, the power serves the same purpose for a trial court: "to enforce obedience to its lawful orders against parties who have been subjected properly to its jurisdiction in the first instance."  Noble Cnty. v. Rogers, 745 N.E.2d 194, 198 (Ind. 2001) (quoting State ex rel. Brubaker v. Pritchard, 236 Ind. 222, 226–27, 138 N.E.2d 233, 235 (1956)). And though courts have upheld the imposition of sanctions in a number of contexts not explicitly involving contempt, a commonality is that these circumstances arose within an ongoing judicial process and the sanctioned persons were engaged in that process.  See, e.g., Rogers, 745 N.E.2d at 197–98 (concluding that Indiana Tort Claims Act did not provide State immunity from such sanctions, because "while the Legislature may shield the State from substantive tort liabilities, it may not immunize the State from our power to sanction *the attorneys and parties appearing before us*" (emphasis added)); Allied Prop. & Cas. Ins. Co. v. Good,  919 N.E.2d 144, 155 (Ind. Ct. App. 2009) ("The trial court has the power to impose sanctions *against a party or attorney* who engages in egregious misconduct that causes a mistrial" and "for violation of an order that *the party or attorney* believes to be . . . erroneous." (emphasis added)), trans. denied; see also Nationstar Mortg., LLC v. Curatolo, 990 N.E.2d 491, 495 (Ind. Ct. App. 2013) ("Trial courts have the inherent power to impose sanctions on *parties and attorneys* for 'discovery violations, contempt, and the government's wrongful conduct.'" (emphasis added) (quoting Good, 919 N.E.2d at 153)).  But that is simply not the case here.

Instead, Townsend's role in this matter began and ended with her completion of the application for emergency detention.  And that action did not even take place in the courthouse.  Rather, Townsend went to the hospital, completed the application with a social worker, and had no further part to play once she signed the paperwork.  It was the hospital that then faxed the physician-endorsed application to the court.  And it was the trial court that approved the application and issued the warrant to detain A.S.

In that way, we do not see Townsend's role here as being much different than a 911 caller who reports a person on the street acting dangerously.  If that person is later charged and tried, the 911 caller is not automatically made subject to the inherent sanctioning power of that trial

court just for having reported potential criminal conduct. The caller would have to be subpoenaed as a witness, or otherwise interfere with that trial process once it was initiated, in order to be subject to the court's authority.

And if the caller was never subpoenaed but the 911 call was later revealed to be false, it would be the State who pursued a charge of false reporting. And perhaps the arrested and charged individual might seek civil redress from the caller in tort. But in such a circumstance it is not the trial court's role within our system of justice to independently investigate the validity of reports that initiate legal proceedings, compel witnesses to appear before it, and mete out punishment when it finds those reports to be unsubstantiated.

A trial court cannot simply otherwise hale a citizen into court and sanction him or her. The inherent power of the judiciary to impose sanctions, while flexible and significant, begins and ends with the courtroom and the judicial process. Thus, because we conclude that the trial court here lacked authority for its contempt finding, and because Townsend otherwise committed no misconduct once the legal proceedings were initiated, she is outside the trial court's inherent power to impose sanctions.

### Conclusion

We reverse the trial court's judgment finding Townsend in contempt and imposing sanctions upon her.

Dickson, C.J., Rucker, Massa, and Rush, JJ., concur.

7